**J. Barrett HYMAN, M.D.,**
**Plaintiff–Appellant,**

**Public Advocate of the United States; Citizens United Foundation; Lincoln Institute for Research and Education; Concerned Women for America; Conservative Legal Defense and Education Fund, Amici Curiae,**

**v.**

**CITY OF LOUISVILLE; Jefferson County, Kentucky; Rebecca Jackson, Jefferson County Judge/Executive; Defendants–Appellees,**

**Fairness Campaign; Dan Farrell; Diane Moten, Intervenors–Appellees.**

**No. 01–5531.**

United States Court of Appeals, Sixth Circuit.

Dec. 9, 2002.

Before GUY and BATCHELDER, Circuit Judges; and QUIST, District Judge.[*]

BATCHELDER, Circuit Judge.

Plaintiff J. Barrett Hyman, M.D., appeals the district court's grant of summary judgment for defendants. Hyman brought suit under the Declaratory Judgment Act challenging the constitutionality of two ordinances that prohibit discrimination in employment on the basis of sexual orientation or gender identity. Because the plaintiff did not have standing to bring his claims at the time he filed the lawsuit, we dismiss the case for lack of jurisdiction.

**I.**

Hyman is a physician who, at the time this lawsuit was filed, practiced medicine in the city of Louisville in a two-doctor partnership that employed six full-time and one part-time employees. Due to his religious beliefs, which he bases on Biblical precepts and attempts to incorporate into all aspects of his life, Hyman will not hire people who actively promote or are involved in sexual relationships outside of marriage. He believes that sexual intimacy is reserved, by God, for a marital relationship between a man and a woman; he has never hired anyone who does not live

---

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

in accordance with that belief and he intends to continue that practice.

In 1999, after years of lobbying by a group called the Fairness Campaign, both the City of Louisville (the "City") and Jefferson County (the "County"), which encompasses the City and several other localities, amended their anti-discrimination ordinances to include "sexual orientation" and "gender identity" amongst the traits upon which employers are not permitted to discriminate. The ordinances passed by the City and County are substantially the same: both not only proscribe discrimination in employment but also prohibit employers from publishing any advertisement related to employment that expresses a "preference, limitation, [or] specification" on, among other things, the basis of sexual orientation or gender identity. *See* Louisville Code Ord. § 98.17(D) (1999); Jefferson County Code Ord. § 92.06(E) (1999).

The Louisville and Jefferson County Human Rights Commission, an entity jointly created by the City and County, is entrusted with enforcement of the ordinances, and has made it clear that it intends to prosecute and fine those who violate the ordinances. Penalties for violation of the ordinances are substantial.

Hyman, predicting a conflict between the ordinances and his intended employment practices, filed separate suits against the City and County on September 13, 1999, under the Declaratory Judgment Act, 28 U.S.C. § 2201. He brought several claims, including those on appeal here: the ordinances violate his free exercise of religion as protected by the United States and Kentucky Constitutions, they violate the federal Due Process Clause, and they violate equal protection under both the federal and state constitutions. The defendants include the City and County, the mayor of the City and the County Judge/Executive sued in their official ca-

pacities, the Commission, and the executive director of the Commission in her official capacity. The two suits were consolidated on March 9, 2000, and the district court then permitted the Fairness Campaign and its members, Dan Farrell and Diane Moten, to intervene.

On October 17, 2000, after each party had moved for summary judgment, Hyman filed a motion to supplement the record with an affidavit in which he stated that in September 2000, approximately one year after filing the lawsuit, he questioned two prospective employees about their sexual orientation and attempted to place an advertisement in the Louisville *Courier Journal* (the ad was rejected by the paper as discriminatory) looking for "Pro-Life and Traditional Pro-Family" applicants for employment. On March 21, 2001, the district court, relying on the facts set forth in Hyman's affidavit, held that because of the immediacy of the Hobson's Choice Hyman faced—either violate the ordinances and face almost certain prosecution, or violate his religious beliefs—Hyman had standing to bring his action under the Declaratory Judgment Act. The court then proceeded to consider the merits of Hyman's claims and ruled in favor of the defendants on each of those claims. This timely appeal followed.

## II.

This court reviews de novo a district court's decision regarding subject matter jurisdiction. *Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 759 (6th Cir.2002). On appeal, only the City of Louisville argues the issue of standing. Even if no party had raised the issue, we would nevertheless have a duty to ensure that this case is properly before the federal courts; a careful adherence to the limits of our power as set forth in Article III of the Constitution obligates us to inquire

into the issue of subject matter jurisdiction *sua sponte* if we have any doubt regarding whether we have, or the district court below us had, jurisdiction to rule on the matter before us. *See Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it."). The duty of satisfying ourselves that we have jurisdiction is particularly important where, as in this case, a constitutional question is presented. *Id.* at 541–42.

Standing, a jurisdictional element drawn from Article III constitutional requirements as well as prudential considerations, is not waivable by the parties and must be present in every case. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). As the party invoking the court's authority, Hyman has the burden of showing that he has standing to sue. *Id.* at 472. To establish standing, a plaintiff must show that he suffered an injury in fact, that the injury is fairly traceable to the defendant's challenged conduct, and that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal quotations omitted).

A plaintiff can meet the standing requirements when suit is brought under the Declaratory Judgment Act by establishing "actual present harm or a significant possibility of future harm," *People Rights Org. v. City of Columbus,* 152 F.3d 522, 527 (6th Cir.1998), "even though the injury-in-fact has not yet been completed." *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 280 (6th Cir.1997). "[P]re-enforcement review is usually granted under the Declaratory Judgment Act when a statute 'imposes costly, self-executing compliance burdens or if it chills protected First Amendment activity.'" *Id.* at 279.

 Significantly, the plaintiff must establish that he had standing at the time that the lawsuit was brought. As Chief Justice Marshall wrote in *Mollan v. Torrance,* 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824), "the jurisdiction of the Court depends upon the state of things at the time of the action brought...." Though a plaintiff may set forth affidavits or other evidence as his case progresses in order to give substance to the allegations made in his initial complaint, including those facts pertaining to standing, *Lujan,* 504 U.S. at 561, this practice does not alter the "long-standing rule that jurisdiction is to be assessed under the facts existing when the complaint is filed." *Id.* at 569 n. 4; *see also Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (noting that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."); *Cleveland Branch, NAACP v. City of Parma,* 263 F.3d 513, 524 (6th Cir.2001) ("The Supreme Court has consistently held that 'jurisdiction is tested by the facts as they existed when the action was brought'....").

 In this case, Hyman filed an affidavit in October of 2000, describing his failed attempt–in September of 2000–to advertise for "Traditional Pro–Family" job applicants in a local newspaper and his direct inquiries–again in September of 2000–into the sexual orientation of his job applicants. Though we express no opinion about whether Hyman's actions place him under

imminent threat of sanction by the Louisville Human Rights Commission, or whether the existence of such actions would be sufficient to show "actual or imminent" injury as required by *Lujan*, we note that these actions would certainly be germane to our standing analysis here if we could consider them. But we cannot consider them because, as the affidavit makes plain, these actions were undertaken by Hyman one year after this lawsuit was filed.

Instead, we must assess the facts as they stood when the complaint was filed. After reviewing those facts, we find that Hyman lacked standing to bring this suit. In September of 1999, Dr. Hyman practiced medicine with another doctor who shared responsibility for hiring employees but opposed screening potential employees on the basis of sexual orientation. Hyman did not at that time have an immediate or projected need to hire a new employee, and, because his views were known in the community, he did not have any real expectation that he would have any homosexual applicants for employment in the future. Moreover, no one that Hyman even suspected of being homosexual had applied to work for him during his thirty-two years of practice. Though Hyman strongly opposed the ordinances, and fully intended to violate them, he could not, at the time he filed suit, demonstrate "actual present harm or a significant possibility of future harm...." *Magaw*, 132 F.3d at 279. The possibility of future harm was neither actual nor imminent, but was conjectural at best, and therefore was not within the purview of disputes that the federal courts are permitted to adjudicate.

## III.

We therefore VACATE the judgment of the district court and remand this matter with instructions that it be DISMISSED without prejudice for lack of standing.