RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0100p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ZANONIA WHITE, et al.,
          *Plaintiffs-Appellants,*

          v.                                                    No. 09-3158

UNITED STATES OF AMERICA, et al.,
          *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 08-00118—Gregory L. Frost, District Judge.

Argued: January 14, 2010

Decided and Filed: April 9, 2010

Before: KENNEDY, COLE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Mark Lee Pollot, LAW OFFICE, Boise, Idaho, for Appellants. John Samuel Koppel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Mark Lee Pollot, LAW OFFICE, Boise, Idaho, for Appellants. John Samuel Koppel, Michael Jay Singer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. Mark Douglas Cooley, ARNOLD & PORTER LLP, Washington, D.C., for Amicus Curiae.

_____

## OPINION

_____

COLE, Circuit Judge. Plaintiffs-Appellants appeal the district court's dismissal of their pre-enforcement challenge to the anti-animal-fighting provisions of the Animal Welfare Act, naming as defendants the United States, the Secretary and Department of Agriculture, the Attorney General and Department of Justice, and the Postmaster General and the United States Postal Service. The plaintiffs-appellants allege that these

1

provisions are unconstitutional insofar as they constitute a bill of attainder; violate the principles of federalism contained in, inter alia, the Ninth, Tenth, and Eleventh Amendments to the United States Constitution; and unduly impinge on the plaintiffs-appellants' First Amendment right of association, constitutional right to travel, and Fifth Amendment right to due process for deprivations of property and liberty. The district court dismissed the lawsuit for lack of Article III standing, a decision that we now **AFFIRM**.

## I. BACKGROUND

### A. Statutory background

Before the district court, the plaintiffs-appellants ("the plaintiffs") sought a declaratory judgment that all provisions of the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131-56, are "unconstitutional and void in their entirety" insofar "as they apply to gamefowl or activities and products relating to gamefowl," and an injunction prohibiting enforcement of these provisions. The targeted provisions of the AWA are contained in § 2156, which places restrictions on cockfighting and other "animal fighting ventures," defined as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 3 animals for purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(g)(1). In February 2008, at the time the plaintiffs filed their complaint, § 2156 prohibited:

- knowingly sponsoring or exhibiting animals in an animal fighting venture if any of the animals was moved in interstate or foreign commerce, *id.* § 2156(a)(1), except for persons (1) sponsoring or exhibiting birds in a state where fighting ventures involving live birds are not illegal, (2) who had not knowingly bought, sold, delivered, transported, or received the birds in interstate or foreign commerce for the purpose of participating in the fighting venture, *id.* § 2156(a)(2);

- knowingly selling, buying, transporting, delivering, or receiving any animal for the purpose of having the animal participate in an animal fighting venture, *id.* § 2156(b);

- knowingly using the United States Postal Service or any instrumentality of interstate commerce for commercial speech for promoting, or in any other manner furthering, an animal fighting venture in the United States,

*id.* § 2156(c), unless the promoted activity is one that involves live birds and takes place in a state where bird fighting is legal, *id.* § 2156(d); and

• knowingly selling, buying, transporting, or delivering in interstate or foreign commerce a knife, gaff, or other sharp instrument attached or intended to be attached to the leg of a bird for use in an animal fighting venture, *id.* § 2156(e).

Originally, § 2156 contained a broader exception for live birds: its prohibitions applied to fighting ventures involving birds "only if the fight is to take place in a State where it would be in violation of the laws thereof." *See* Animal Welfare Act Amendments of 1976, Pub. L. No. 94-279, 90 Stat. 417 (1976) (adding § 2156 to the AWA). In 2002, Congress limited this exception considerably by eliminating its applicability to subsection (b) (which covers the knowing sale, purchase, transport, delivery, and receipt of animals for fighting purposes) and amending subsection (a) (which covers the knowing sponsorship and exhibition of animals for fighting purposes) to the wording that existed at the time of the plaintiffs' complaint. *See* Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, 116 Stat. 134, 491-92 (2002). In 2007, Congress added subsection (d), covering knives, gaffes and other sharp instruments intended for bird-fighting purposes. Animal Fighting Prohibition Enforcement Act, Pub. L. No. 110-22, 121 Stat. 88 (2007).[1]

In sum, at the time the plaintiffs filed their complaint, § 2156 restricted (and continues to restrict) various activities associated with animal fighting that involve interstate travel and commerce, but did not (and does not) itself prohibit animal fighting, including cockfighting. All fifty states have legislation prohibiting cockfighting, however, although the defendants concede that Louisiana's ban had not yet taken effect at the time the plaintiffs filed their complaint and that cockfighting remains legal in some U.S. territories and the Commonwealth of Puerto Rico.[2]

---

[1] Congress further amended § 2156 in June 2008, *see* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, 122 Stat. 2223 (2008), after the plaintiffs filed their complaint. The plaintiffs do not challenge the 2008 amendments.

[2] For the purposes of § 2156, "State" is defined as "any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States." 28 U.S.C. § 2156(g)(3). Thus, the AWA's prohibitions on activities involving interstate travel and

**B.  Plaintiffs' alleged injuries**

In support of their claims for declaratory and injunctive relief, the plaintiffs allege that the AWA has caused them various individual and collective injuries.  We accept the factual basis of these injuries as true because the plaintiffs' suit was dismissed at the pleading stage.  *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008).

Zanonia White, a resident of Weimar, Texas, who supplements her retirement income by selling chickens, alleges that she no longer fights birds and sells chickens only for breeding and show purposes.  She does not sell birds to any person she believes will use them for fighting purposes and requires all customers to sign a form certifying the same.  Nonetheless, she is contemplating ceasing her breeding business because she fears arrest under the AWA and consequent economic damages.  She claims to know of other law-abiding breeders who have been harassed by law enforcement officials regarding their breeding activities.

Ben J. Taylor, a resident of Newport, Tennessee, raises and sells gamefowl for show and breeding purposes, but no longer for fighting purposes.  He claims that the AWA has significantly reduced the market for his birds, both because it has restricted his sales to non-fighting purposes and because customers who might otherwise buy his birds for show or breeding purposes are loathe to transport birds across state lines for fear of wrongful prosecution under § 2156.  He, too, is reluctant to ship his birds across state lines for fear of wrongful prosecution.

Teresa Doolittle, also a resident of Newport, has operated a feed store there for over a decade.  While the gamefowl industry originally provided approximately sixty percent of the store's business, the AWA allegedly has led that figure to decline to about twenty percent (representing a $30,000 to $60,000 loss in gross revenue), and Doolittle estimates that the figure will drop further to about fifteen percent.  Following amendments to the AWA in 2007, Doolittle ceased to ship birds even for lawful purposes because of the risk of wrongful prosecution.

---

commerce extend to Puerto Rico and American territories and possessions.

Anthony Seville is president of the American Game Fowl Society, a nonprofit organization that promotes the showing of gamefowl and that is affiliated with the American Poultry Association. He claims that the AWA has adversely affected his ability to work as a gamefowl judge and promote gamefowl shows because potential exhibitors are reluctant to participate due to the legal risks associated with transporting birds, including that of wrongful prosecution.[3]

Milton Brooks is a Georgia resident who has been collecting rare gamefowl stock for show and breeding purposes for the past ten years. He claims that, as a result of the AWA, he no longer can transport or sell birds across state lines for fighting purposes, even to those (unspecified) states where cockfighting remains legal. Moreover, the AWA has reduced his ability to sell birds for non-fighting purposes because it has chilled the purchase and transport of breeding and show birds.

In addition to these individual injuries, the plaintiffs argue that they collectively have suffered and will continue to suffer violations of various constitutional rights because of the AWA. First, the plaintiffs argue that the AWA creates an "unconstitutional impairment of plaintiffs' Fifth Amendment liberty interests in their right to travel," by prohibiting them "from taking the property they own from a place where they have the right to own, possess, and enjoy it to another place where they have the right to own, possess, and enjoy it," and chilling the right to travel with chickens intended for non-fighting purposes. Second, the AWA allegedly impinges the plaintiffs' First Amendment association rights by making it impossible for the plaintiffs to travel to the events at which they ordinarily would associate with like-minded people. Third, the plaintiffs argue that the AWA inflicts punishment on them and other members of the gamefowl community without a judicial trial and therefore is a bill of attainder. Finally, the plaintiffs argue that the AWA violates principles of federalism embodied, inter alia, in the Ninth, Tenth, and Eleventh Amendments to the United States Constitution by

---

[3]The complaint alleges that, by the same token, the AWA also has adversely affected the organizational interests of the American Game Fowl Society and its members by chilling the transportation of birds for show across state lines. Neither the American Game Fowl Society nor its other members, however, is party to this lawsuit.

impermissibly favoring the domestic policies of those states that have enacted cockfighting bans over those of states that have not.

## C. Procedural history

On the basis of these alleged injuries, the plaintiffs filed suit on February 7, 2008. On October 28, the defendants filed a motion to dismiss the complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). The plaintiffs filed a response on December 9. On January 26, 2009, the district court granted the defendants' motion to dismiss for lack of standing, noting that, to be conferred standing, the plaintiffs had the burden of demonstrating that they had (1) personally suffered an "injury in fact" that was actual or imminent and not conjectural or hypothetical; (2) that the injury was "fairly traceable" to the challenged action of the defendant (i.e., the enactment and enforcement of § 2156); and (3) that a favorable decision likely would redress the injury. *White v. United States*, No. 2:08-cv-118, 2009 WL 173509, at *2 (S.D. Ohio Jan. 26, 2009) (op. & order) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Rather than address individually the plaintiffs' various alleged economic and constitutional injuries, the court consolidated the injuries into two basic "premises": first, that the plaintiffs feared false prosecution under § 2156, and second, that they had suffered economic injuries because of the AWA. *Id.* at *3. On the first premise, the court found that the plaintiffs' fear of false prosecution did not constitute an "injury in fact" sufficient to confer constitutional standing. In the court's words, because the "'[p]ossibility of future harm [is] neither actual nor imminent, but [is] conjectural at best,'" the plaintiffs' potential injury due to false prosecution "'[is] not within the purview of disputes that the federal courts are permitted to adjudicate.'" *Id.* at *4 (quoting *Hyman v. City of Louisville*, 53 F. App'x 740, 744 (6th Cir. 2002)). On the second premise, the court reasoned that, because cockfighting is now illegal in all fifty states and in the District of Columbia, there would be no legal domestic market for cockfighting even if § 2156 were declared unconstitutional. Thus, any economic injuries the plaintiffs had suffered were not traceable to the AWA nor redressable by the

declaratory or injunctive relief sought, as required under the second and third prongs of the test for Article III standing. *Id.* at \*4-\*5.

The plaintiffs timely appealed the district court's decision that they lack constitutional standing to bring their claims. We have jurisdiction over the final decision of the district court under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

The plaintiffs argue that the district court erred in dismissing their lawsuit for lack of constitutional standing. We review the district court's decision de novo. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) (citing *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007)); *see also Raines v. Byrd*, 521 U.S. 811, 820 (1997) ("[O]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."). Constitutional standing under Article III has three elements. *Fednav*, 547 F.3d at 614. "'First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). Second, the injury must be "'fairly traceable to the challenged action of the defendant.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). Third, it must be likely that the injury will be "'redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 U.S. at 561).

Each of these elements "'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive states of the litigation.'" *Id.* (quoting *Lujan*, 504 U.S. at 561). As stated above, because the plaintiffs' suit was dismissed at the pleading stage, we "'must accept as true all material [factual] allegations of the complaint.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). We also must construe the complaint liberally in favor of the complaining party. *See United States v. Salti*, 579 F.3d 656, 667 n.11 (6th Cir. 2009) (citing *Warth*, 422 U.S. at 501). General factual allegations of injury may suffice to demonstrate standing, "for on a motion to dismiss

we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). However, "standing cannot be inferred . . . from averments in the pleadings, but rather must affirmatively appear in the record," *Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998), nor will "naked assertion[s] devoid of further factual enhancement" suffice, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Rather, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).

Rather than examine each of the various injuries alleged by the plaintiffs to determine which, if any, satisfy the test for constitutional standing, we can distill the claimed injuries into four categories: first, the plaintiffs' economic injuries caused by the AWA; second, the plaintiffs' fear of false prosecution under the AWA and resulting "chill" on the plaintiffs' conduct; third, the AWA's violation of plaintiffs' constitutional rights; and fourth, the AWA's violation of the principles of federalism contained in the Ninth, Tenth, and Eleventh Amendments. None of these alleged injuries suffices to confer standing on the plaintiffs.

## III. DISCUSSION

### A. Economic injuries

The plaintiffs argue that the district court was compelled to accept as true their allegations that there are states and territories where cockfighting remains legal and note that even the defendants conceded that cockfighting is allowed in Puerto Rico and some American territories. By consequence, according to the plaintiffs, the district court erred in finding that the economic injuries they have suffered and continue to suffer cannot be traced to § 2156's prohibition on activities involving interstate and foreign travel and commerce for the purposes of cockfighting. Rather, they argue, their injuries may be fairly traced to the AWA, and a declaration that § 2156 is unconstitutional and an order enjoining its enforcement would redress these injuries. In their words, "if the court finds the statutory provisions to be unconstitutional . . . persons who have stopped the

activities prohibited by the statute would resume them, and the . . . injuries sustained by appellants, including but not limited to economic losses . . . would be limited or avoided in the future."

Contra the plaintiffs' argument, the district court was not compelled to accept their legal allegations as true. *See Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Neither are we. Cockfighting is banned to a greater or lesser degree in all fifty states and the District of Columbia. Thus, while economic injuries may constitute an injury-in-fact for the purposes of Article III standing, *see Lujan*, 504 U.S. at 559-61; *see also Lambert v. Hartman*, 517 F.3d 433, 437 (6th Cir. 2008) (noting that "actual financial injuries" may satisfy the injury-in-fact requirement), the plaintiffs' alleged economic injuries due to restrictions on cockfighting are not traceable only to the AWA. *Cf. San Diego County Gun Rights v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (holding that state law banning activities similar to those prohibited by challenged federal law undercut traceability). Nor would these injuries be redressed by the relief plaintiffs seek, since the states' prohibitions on cockfighting would remain in place notwithstanding any action we might take in regard to the AWA.

While the defendants concede that cockfighting remains legal in Puerto Rico and some territories of the United States, this concession does not aid the plaintiffs. The complaint does not allege that the plaintiffs have ever derived any income from or engaged in any trade with individuals in Puerto Rico or U.S. territories. Nor does it claim that the plaintiffs have any intent to do so in future. Absent any allegation that the plaintiffs have lost or will lose income because of the AWA's restrictions on interstate commerce with these locales, the bald assertion that plaintiffs have suffered economic injury due to the AWA is not sufficient to confer standing based on the continued legality of cockfighting there. *See Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 522 (6th Cir. 2008) ("The court should not assume facts that could and should have been pled, but

were not."); *cf. Iqbal*, 129 S. Ct. at 1949 (complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").[4]

**B. Fear of false prosecution and resulting "chill" on plaintiffs' conduct**

The risk of false prosecution under the AWA also is too speculative to confer standing on the plaintiffs. In reaching the same conclusion, the district court emphasized that none of the plaintiffs alleged any intention to engage in conduct prohibited by the AWA. *White*, 2009 WL 173509, at *3. This emphasis is misplaced. Whether or not the plaintiffs alleged an intention to engage in prohibited conduct is not relevant to their allegations that they risk false prosecution under the AWA even if they engage only in lawful conduct. This issue aside, however, the district court was correct to conclude that the risk of false prosecution to the plaintiffs is too speculative to confer standing.

"'A threatened injury must be certainly impending to constitute injury in fact.'" *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 929 (6th Cir. 2002) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *accord City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The plaintiffs' allegations of potential false prosecution amount to a claim that, if they transport or sell chickens across state lines for non-fighting purposes and if they are stopped by law enforcement authorities, the authorities may misinterpret the plaintiffs' intent and may wrongly prosecute them. This claim accordingly bears some similarity to the allegations presented in *O'Shea v. Littleton*, 414 U.S. 488 (1974), which the Supreme Court found insufficient for standing. In *O'Shea*, the plaintiffs sought injunctive relief against two judges who allegedly were engaged in "a continuing pattern and practice" of discriminatory and unconstitutional bond-setting, sentencing, and mandating of fee payments. *Id.* at 491-92. The Court found that these allegations amounted to a claim "that *if* respondents proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any

---

[4]In February 2008, when the plaintiffs filed their complaint, Louisiana's ban on cockfighting had not yet gone into effect. *See* La. Rev. Stat. Ann. § 14:102.23 (2008); *Cleveland Branch, NAACP v. City of Pharma*, 263 F.3d 513, 524 (6th Cir. 2001) ("The Supreme Court has consistently held that 'jurisdiction is tested by the facts as they existed when the action [was] brought . . . .'") (quoting *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957)). The plaintiffs have not alleged any present or future economic loss due to foregone revenues from Louisiana, and the state's now effective ban would render moot any such claim.

proceedings before [the judges], they will be subjected to the discriminatory practices that [the judges] are alleged to have followed." *Id.* at 497. As in *O'Shea*, the chain of events necessary for the plaintiffs in this case to suffer false prosecution veers "into the area of speculation and conjecture." *Id.* In the district court's words, the "[p]laintiffs' pleading as to the scenario of events that must unfold to injure them—their allegations that they *might* incur injury in the future *if* the law is not properly followed and *if* their intentions are misconstrued—is simply too . . . highly conjectural" to present a threat of immediate injury, as the allegations "rest[] on a string of actions the occurrence of which is merely speculative." *White*, 2009 WL 173509, at *4. While wrongful prosecution may be more likely here than in *O'Shea* in light of the plaintiffs' claim that law enforcement officials mistakenly believe, due to misinformation provided by entities like the Humane Society, that birds intended for fighting are distinguishable from birds that are not, the risk remains too remote to confer standing.[5]

Nor does the "chill" on the plaintiffs' right of travel, right of association, and "right to be free of bills of attainder," which the plaintiffs claim results from their fear of false prosecution, suffice for standing. Our jurisprudence assumes that only the chilling of First Amendment rights may confer standing. Moreover, where a plaintiff seeks injunctive or declaratory relief to remedy a First Amendment violation, a subjective fear of chilling will not suffice for standing absent a real and immediate threat of future harm. *See Hange v. City of Mansfield*, 257 F. App'x 887, 891 (6th Cir. 2007) ("[T]o seek an injunction . . . the mere subjective fear that a plaintiff will be subjected . . . to an allegedly illegal action is not sufficient to confer standing.") (citing *Lyons*, 461 U.S. at 107 n.8 ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.")); *see also Fieger v. Mich. Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009) ("'[T]he Supreme Court is emphatic: 'Allegations of a subjective 'chill' are not an adequate substitute for a claim

---

[5]The complaint included as defendants "Does 1-50 [who] include other persons or entities who, like defendant [Humane Society of the United States] have been acting on behalf or in concert with the named defendants . . . in carrying out or assisting law enforcement and government officials," and sought to enjoin any defendant from providing to law enforcement officials or other organizations "false or misleading information pertaining to characteristics of chickens." The plaintiffs' brief before this Court does not mention these defendants nor this prayer for relief.

of *specific present objective* harm or a threat of *specific future* harm.'"") (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). As argued above, the risk of false prosecution the plaintiffs face in this case is too speculative to confer standing. Their resulting decision to curtail their activities based on their subjective fear of prosecution—the alleged "chill" on their constitutional rights—does not affect this analysis. As we stated in *Morrison v. Board of Education*, 521 F.3d 602 (6th Cir. 2008), "subjective apprehension and a personal (self-imposed) unwillingness" to engage in First Amendment conduct, "without more," "fail to substantiate an injury-in-fact for standing purposes." *Id.* at 610 (citing *ALCU v. NSA*, 493 F.3d 644, 662 (6th Cir. 2007)). While the plaintiffs argue that law enforcement officials' mistaken belief regarding the distinctive characteristics of fighting birds helps transform their subjective apprehension of prosecution into a fear of imminent injury sufficient to confer standing, the risk of wrongful prosecution remains overly speculative, even in light of this allegation.

## C. Violations of plaintiffs' constitutional rights

The plaintiffs' brief focuses on the chill to plaintiffs' constitutional rights based on the fear of false prosecution. However, the plaintiffs' complaint also appears to allege constitutional violations based on § 2156's ban on interstate sales and transportation of chickens actually intended for fighting purposes, since some of the plaintiffs allegedly would sell and / or transport chickens for fighting purposes but for the AWA's restrictions. By prohibiting the sale and transportation of chickens for fighting purposes, the AWA violates (or so the complaint argues) the plaintiffs' rights of travel and association, their "rights to due process in the deprivation of their rights to property and liberty," and their "right to be free from bills of attainder."

The plaintiffs argue that they need not allege an intention to violate the AWA in order to have standing based on these alleged violations of their constitutional rights. We indeed have held that "[a] plaintiff can meet the standing requirements when suit is brought under the Declaratory Judgment Act by establishing 'actual present harm or a significant possibility of future harm,' *People's Rights Org. v. City of Columbus*, 152 F.3d 552, 527 (6th Cir. 1998), 'even though the injury-in-fact has not yet been

completed.' *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)." *Hyman*, 53 F. App'x at 743. In other words, the plaintiffs are correct that they need not actually violate the AWA in order to have standing. However, they still must demonstrate an injury-in-fact to a legally protected interest that is actual or imminent and that satisfies the other prongs of the constitutional standing test.

The purported constitutional violations the plaintiffs allege do not satisfy this standard. Even if the plaintiffs' allegations that they would sell chickens for fighting purposes but for § 2156 are sufficient to demonstrate a significant possibility of future harm, none of the purported "constitutional" injuries actually implicates the Constitution. *Cf. Lujan*, 504 U.S. at 560 (injury-in-fact must implicate legally protected interest). The plaintiffs' arguments to the contrary are near frivolous. The plaintiffs offer no support for their argument that the right to travel "includes within it the right . . . to bring with them their property . . . in this case birds and paraphernalia including . . . 'sharp implements.'" Nor do they provide any support for the argument that their rights to association are violated because the AWA "mak[es] it impossible to travel to the events at which [the plaintiffs] would ordinarily associate with like-minded people" since "[t]he very property which Congress wants plaintiffs to leave at home is the very reason the plaintiffs associate with other[s] in the gamefowl community." In fact, § 2156 neither prohibits travel nor prevents individuals from associating for the purposes of animal fighting in locations where animal fighting remains legal. Nor does it deprive the plaintiffs of property or liberty without due process. If the plaintiffs violate the AWA and are arrested for doing so, there is no reason to think they will not receive the procedural protections of the federal criminal justice system. By the same token, because the AWA does not impose any penalties without a judicial trial, it is not a bill of attainder. *Cf. United States v. Brown*, 381 U.S. 437, 448-49 (1965) (describing features of bills of attainder). Because none of these alleged injuries actually implicates the Constitution, none is sufficient to confer standing.

**D. Federalism violation**

Finally, the plaintiffs argue that the anti-animal-fighting provisions of the AWA violate the principles of federalism contained in the Ninth, Tenth, and Eleventh Amendments by favoring the policies of those states that ban cockfighting in a manner that imposes burdens on those states that have not enacted such bans. Even assuming the plaintiffs are correct that a constitutional violation has occurred, they do not have standing to challenge it. A party invoking the court's jurisdiction must show that he has "personally suffered" some actual or threatened injury. *Lujan*, 504 U.S. at 563; *see also Warth*, 422 U.S. at 499 ("The Art. III judicial power exists only to redress or otherwise protect against injury to the complaining party . . . . A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury . . . .") (internal quotation marks omitted). Any injury here is to the impacted states, and perhaps to their citizens or the citizens of the United States in general. Thus, the plaintiffs cannot be said to have "personally suffered" the alleged federalism violation in a manner that would confer standing. *Cf. Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 716 (6th Cir. 1995) (standing cannot be conferred based upon "a mere interest in a problem") (citing *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).

## IV. CONCLUSION

For the reasons described above, we **AFFIRM** the decision of the district court.