RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0136p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PLATINUM SPORTS LTD, doing business as
Allstars, a Michigan Corporation,
                              *Plaintiff-Appellant*,

                    v.

RICK SNYDER and BILL SCHUETTE,
                              *Defendants-Appellees*.

Nos. 12-1811/1812

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:11-cv-14635—John Corbett O'Meara, District Judge.

Decided and Filed:  May 13, 2013

Before:  DAUGHTREY, SUTTON and KETHLEDGE, Circuit Judges.

———————————

### COUNSEL

**ON BRIEF:** Timothy Patrick Murphy, Saint Clair Shores, Michigan, for Appellant. Ann Sherman, Margaret A. Nelson, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

———————————

### OPINION

———————————

SUTTON, Circuit Judge.  In 2011, the Michigan legislature enacted two laws. One barred sexually oriented businesses from displaying signs on the premises that contained more than "words or numbers." Mich. Comp. Laws § 125.2833.  The other imposed similar restrictions on off-site billboards. Mich. Comp. Laws § 252.318a.  Two businesses affected by the legislation sued Governor Rick Snyder (and in one lawsuit also named Attorney General Bill Schuette), challenging the laws on First Amendment grounds. *See* Compl. at 18, *Top Flight Entm't, Ltd. v. Snyder*, No. 5:11-cv-13133 (E.D.

Mich. July 20, 2011); Amend. Compl. at 14, 16, *ABCDE Operating, LLC v. Snyder*, No. 5:11-cv-11426 (E.D. Mich. May 6, 2011). The district court preliminarily enjoined enforcement of the laws. In response, the Governor and the Attorney General stipulated to a final judgment declaring both laws facially unconstitutional and permanently enjoining their enforcement. *Top Flight*, No. 5:11-cv-13133 (Aug. 26, 2011), ECF No. 10; *ABCDE*, No. 5:11-cv-11426 (Aug. 25, 2011), ECF No. 25. That, one might have thought, was the end of that.

Yet two months later, on October 21, 2011, Platinum Sports, represented by the same attorney who had won the first set of lawsuits, sued the same defendants, challenging the same laws (and one other largely irrelevant provision) on the same free-speech grounds. Whether Platinum Sports wished to seize potential defeat from the jaws of established victory or hoped to pile victory (and potential § 1988 fees) on top of victory is not clear. What is clear is that the federal courts have no authority to resolve this "dispute." The hardest question is which Article III defect to invoke. We choose lack of standing, lack in particular of a cognizable injury, and on that ground affirm the district court's dismissal of the case.

A party who brings a facial challenge to a law "seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question." *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999). A successful facial challenge invalidates a law in all of its applications, "forbidd[ing]" any enforcement of it. *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). The upshot is that a State may not enforce such a law against anyone.

In this instance, the district court entered a stipulated final judgment declaring the two laws facially unconstitutional and enjoining the Governor and Attorney General from enforcing either law. Nor is there any reason to fear the Governor or Attorney General will sidestep these orders. They agreed to their entry. If any doubt remained about the point, the Governor and Attorney General eliminated it in this case. In their appellate brief, they have recognized the "provisions to be unconstitutional," Br. at 22, and have promised that they "will not be enforced," *id.* at 16. Anything in this world is

possible, we suppose. But the *legal* possibility that this Governor or this Attorney General will enforce these laws in the face of these injunctions is: zero.

Where does that leave Platinum Sports? In good shape, so far as its authority to erect signs and billboards goes; in bad shape, so far as this lawsuit goes. A claimant does not present the kind of "case or controversy" required by Article III of the United States Constitution unless it suffers an injury caused by the defendant and redressable by a court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A cognizable injury must be "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted).

As the district court concluded and as we must agree, Platinum Sports has no cognizable theory of injury. It offers no explanation how it was injured before the laws were preliminarily enjoined, and it cannot show any injury going forward in view of the injunctions.

Every effort by Platinum Sports to prove otherwise misses the net and the rim. It claims that its sign and billboard speech will be "chilled" by the continued appearance of the statutes "on the books." Reply Br. at 1. The word "chill," to be sure, often warrants judicial attention, particularly when it appears within 25 words of "speech" and "First Amendment." But not here: whatever chilling effect the on-the-books existence of these laws might have in the abstract is removed by the concrete injunction preventing their enforcement.

Otherwise, every sexually oriented business would have a cognizable injury until it filed and won what would become a parade of lawsuits. If one stipulated injunction barring enforcement of a law does not remove the "chilling" effect of an (invalid) law still "on the books," it is hard to see why a second, third and fourth injunction would eliminate this kind of injury. It would not. Yet this theory of injury looks at the problem through the wrong end of the lens. Even in the First Amendment context, the question is whether the claimant has an "actual and well-founded fear that the law will be enforced against them." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393

(1988).  Absent some "credible threat" of enforcement, no injury exists.  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

*White v. United States*, 601 F.3d 545 (6th Cir. 2010), offers a useful illustration. Several bird breeders challenged the validity of the Animal Welfare Act, 7 U.S.C. §§ 2131–56, which bans "animal fighting venture[s]," such as cockfighting, *id.* § 2156. Worried that prosecutors might mistake their lawful breeding activities for illegal ones, they claimed that the law hampered their rights of association and travel.  *White*, 601 F.3d at 554.  Any such risk, we concluded, was too remote to establish a cognizable Article III injury.  The claim "that they *might* incur injury in the future *if* the law is not properly followed" rested on speculation and conjecture, *id.*, precluding a "well-founded fear" of enforcement, *Am. Booksellers*, 484 U.S. at 393.  *See also Kilroy v. Husted*, No. 12-3590 (6th Cir. Oct. 1, 2012) (order dismissing First Amendment challenge due to prior ruling that the challenged statute was unconstitutional).

The same is true here.  Platinum Sports has nothing to fear but, to borrow a phrase, fear itself, and that assuredly does not amount to a "well-founded fear" of enforcement.  On this record, Platinum Sports has no reason to withhold its speech and thus no injury.

Shifting gears from the threat of enforcement by executive branch officials and from the chilling effect of laws on the books, Platinum Sports argues that the current legislature, more precisely one legislator, poses a risk.  The sponsor of the laws, State Senator Tupac Hunter, it is true, sought public support for enforcing the statutes. Senator Hunter invited the public to sign an online petition showing "that you support [the two laws] and that you expect local law enforcement officials to enforce the laws and fine those businesses that fail to remove or change their signs."  R.10-7 (12-1812). At one point, that effort might have meant something.  By the time the district court had entered a stipulated injunction against enforcement of the laws, however, that effort had come to a halt.  Quite notably, Platinum Sports does not argue that Senator Hunter has urged any state official to defy the injunction, whether through an online petition or otherwise.

So far, we have focused on the threat of future injury—through future enforcement of the laws. And with good reason: that is the focus of Platinum Sports's complaint and the focus of the theory of injury laid out in its briefs below and on appeal. Of course, the invalidation of a statute would not erase an injury that had occurred *before* the court's injunction. That sort of money-damages claim generally could proceed beyond the pleading stage. But Platinum Sports never mentions or develops a retroactive theory of damages. It mentions damages in both complaints but, as the bulk of its complaints and as its appellate and district court briefs confirm, that theory relates only to the supposed loss of income caused by the ongoing "chilling" effect of having the laws on the books. As we have shown, any supposed loss of income suffered from the company's advertisement decisions after the injunctions would be of its own making—and not attributable to the State. By focusing on these latter arguments and ignoring a damages theory based on any effect of the law before the injunctions, Platinum Sports has forfeited a retroactive damages claim. *See Conlin v. Mortg. Elec. Registration Sys., Inc.*, __F.3d__, 2013 WL 1442263, at *3 n.5 (6th Cir. 2013); *Indah v. SEC*, 661 F.3d 914, 924 (6th Cir. 2011); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1083 n.5 (6th Cir. 2010).

Even if that were not the case, even if Platinum Sports had not forfeited a retroactive theory of damages, the complaint would face a similar fate—a properly granted motion to dismiss. Neither defendant has ever enforced or threatened to enforce the challenged statutes, and Platinum Sports accordingly cannot point to a constitutional violation that would support a claim. Surely, as a result, the defendants would be entitled to qualified immunity.

None of Platinum Sports's other arguments establish standing. In this setting, claim preclusion, contrary to Platinum Sports's submission, has nothing to do with Article III injury. The question is not whether claim preclusion does, or does not, prohibit the Governor and Attorney General from enforcing the laws against Platinum Sports. All that matters is that the district court's orders declared the laws facially

unconstitutional, necessarily prohibiting their enforcement against anyone, including the plaintiff.

Also irrelevant is Platinum Sports's ingenuity in coming up with *another* potential reason to invalidate the laws: the Equal Protection Clause. Once a court declares a law facially unconstitutional and enjoins its enforcement by the State, any risk of injury from enforcement of the law ends. An Article III injury does not arise from the possibility that the law contains still another constitutional flaw. If anything, an additional theory of invalidity undermines Platinum Sports's position, as the second theory offers more, as opposed to fewer, reasons *not* to fear enforcement of the law.

Also beside the point is Platinum Sports's claim that the billboard statute, together with a separate permitting statute, Mich. Comp. Laws § 252.306, operates as an impermissible prior restraint on speech. Platinum Sports's only complaint about the permitting statute is that it implements the billboard law. In view of the earlier decisions, there is nothing to implement and accordingly no potential injury caused by this separate provision. Just as an unchallenged provision of an Act that defines its terms would not create a cognizable risk of injury after the operative provisions were invalidated, so the same is true of the permitting provision.

Platinum Sports adds that Attorney General Bill Schuette was not a party to one of the two prior cases and neither were any local prosecutors. That changes nothing. The "executive power" of Michigan is "vested in the governor," Mich. Const. art. V, § 1, and the Attorney General, as the top legal official in the State, is bound by a permanent injunction against his top client: the Governor. As for local prosecutors, they answer to the Attorney General, who is obligated to "supervise the work of . . . prosecuting attorneys." Mich. Comp. Laws § 14.30. Any effort by a prosecutor at this point to enforce the statutes—keeping in mind that no one has threatened any such thing—would be *ultra vires*. All of this explains why Platinum Sports did not name *any* prosecutors in *this* case but sued only the Governor and the Attorney General.

For these reasons, we affirm the dismissal of this case.