the issue of standing.  As this Court will not issue advisory opinions, we decline to comment on the merits of Grendell's constitutional claim.  *See Johnson v. Turner,* 125 F.3d 324, 336-37 (6th Cir. 1997) (noting that the standing requirement has been construed to prohibit advisory opinions).

### IV. Conclusion

For these reasons, this Court concludes that the plaintiff-appellants and cross-appellees have no standing, and we **REVERSE** the district court on that claim.  As the district court lacks jurisdiction due to lack of standing, we also **AFFIRM** the district court's dismissal of this action.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0186P (6th Cir.)
File Name:  01a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TIMOTHY J. GRENDELL;
GERALD W. PHILLIPS,
          *Plaintiffs-Appellants/*
              *Cross-Appellees,*

                                          Nos. 99-4513;
                                          00-3022

                    *v.*

THE OHIO SUPREME COURT,
et al.,
          *Defendants-Appellees/*
              *Cross-Appellants.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No.  99-01063—Edmund A. Sargus, Jr., District Judge.

Argued:  March 16, 2001

Decided and Filed:  June 5, 2001

Before:  COLE and GILMAN, Circuit Judges; ALDRICH,
District Judge.

_____

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** Timothy J. Grendell, GRENDELL & SIMON CO., Cleveland, Ohio, for Appellants. Elise W. Porter, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Timothy J. Grendell, GRENDELL & SIMON CO., Cleveland, Ohio, Gerald W. Phillips, Avon, Ohio, for Appellants. Elise W. Porter, Michael J. Renner, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

---

## OPINION

---

ALDRICH, District Judge. The plaintiff-appellants and cross-appellees, Timothy Grendell and Gerald Phillips ("Grendell"), bring this case against the defendant-appellees and cross-appellants, the Ohio Supreme Court and four of the justices serving on that Court ("the Ohio Supreme Court"), seeking declaratory and injunctive relief. Grendell argues that Ohio Supreme Court Practice Rule XIV, § 5 ("Rule XIV, § 5" or "the Rule") is unconstitutional on its face, violating the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, since it does not afford notice and the opportunity to be heard. Ruling on the Ohio Supreme Court's motion to dismiss under Fed. R. Civ. P. 12(b)(6), Judge Edmund Sargus (S.D. Ohio) held that: (1) Grendell had standing to bring the claim; and (2) the Rule was not unconstitutional on its face. The case was dismissed and Grendell appeals to this Court. The Ohio Supreme Court cross-appeals on the issue of standing. For the following reasons, this Court **REVERSES** the district court on the issue of standing, and **AFFIRMS** the dismissal of Grendell's claim.

distinguishable from the present case. In *Feldman,* the plaintiff made a general constitutional challenge to the District of Columbia bar application rule. *See Feldman,* 460 U.S. at 487 n. 18. While not permitted to challenge the District of Columbia Court of Appeals decision to deny his application, Feldman could nevertheless reapply to sit for the District of Columbia bar examination. As the Tenth Circuit notes, Feldman "still had an interest in practicing law in the state or district involved and therefore had standing to assert that the restrictive bar admission rules should be declared unconstitutional." *Facio,* 929 F.2d at 545. Said differently, because Feldman was prohibited from admission to the bar, he was subject to the "continuing, present adverse effects" necessary to establish standing for declaratory and injunctive relief. *Lyons,* 461 U.S. 95, 102 (1983).

In this case, however, Grendell cannot establish such continuing, present adverse effects. The *Rooker-Feldman* doctrine and 28 U.S.C. § 1257 effectively foreclose review of the Ohio Supreme Court's decision to impose sanctions in *State of Ohio ex rel. Grendell* in the lower federal courts. Accordingly, such sanctions are final, and cannot be overturned even if Rule XIV, § 5 is later held facially unconstitutional. *See Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund,* — F.3d —, 2001 WL 459913, at *3 (6th Cir. 2001) (noting that a change in decisional law on constitutional grounds is rarely an extraordinary circumstance meriting relief from final judgment). As noted earlier, Grendell also has not established that the Ohio Supreme Court has threatened sanctions against him in the cases from which he voluntarily withdrew or any other case currently before that Court. Accordingly, he is not subject to the continuing harm of Rule XIV, § 5, and therefore lacks standing to seek declaratory and injunctive relief.

As a final note, although we take a dim view of Grendell's claim that Rule XIV, § 5, on its face, violates the Due Process Clause of the Fifth and Fourteenth Amendments to the Constitution, we reach our conclusion in this case solely on

be read as implicating the standing of a litigant seeking declaratory and injunctive relief.

Such a construal of the holding in *Feldman* is also consistent with prior precedent. As the Supreme Court has previously noted, "when questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." *Hagans v. Lavine,* 415 U.S. 528, 535 n. 5 (1974). This is especially true as it relates to the issue of standing, "perhaps the most important of [the jurisdictional] doctrines." *FW/PBS v. City of Dallas,* 493 U.S. 215, 231 (1990). Accordingly, the Supreme Court's determination in *Feldman* concerning a federal district court's subject matter jurisdiction over a general constitutional challenge, made without comment as to the standing of the litigants, cannot be construed as implying that all general constitutional challenges made in recognition of the *Rooker-Feldman* doctrine confer standing on those litigants. Indeed, other circuit courts have refused to endorse the notion that a claim's conformity with the strictures of the *Rooker-Feldman* doctrine absolves a litigant from establishing proper standing. *See Landers Seed Co., Inc. v. Champaign Nat'l Bank,* 15 F.3d 729, 732 (7th Cir. 1994) (noting that if the plaintiff sought review of a state court verdict in lower federal court, the *Rooker-Feldman* doctrine barred jurisdiction; and if the plaintiff sought only declaratory and injunctive relief in recognition of the *Rooker-Feldman* limitation, "it would not have standing to sue"); *Facio v. Jones,* 929 F.2d 541, 544-45 (10th Cir. 1991) (holding that a plaintiff did not have standing to seek declaratory relief, since under the *Rooker-Feldman* doctrine he was "[u]nable to attack the final [state court] default judgment rendered against him," and he could not show "that he will again be subject to the [state court] default provisions" which would give rise to an actual controversy).

Even if this Court were to construe the Supreme Court's language in *Feldman* as an implication that the litigants had achieved standing, the facts of that case are clearly

## I. Background

This case involves sanctions imposed by the Ohio Supreme Court against the plaintiff-appellants in a different, though related case, *State of Ohio ex rel. Grendell v. Davidson,* 86 Ohio St. 3d 629, 716 N.E.2d 704 (Ohio 1999). In that case, Diane Grendell, a member of the Ohio House of Representatives ("Ohio House") and the wife of the plaintiff-appellant, sought the addition of a provision to an appropriations bill in the Ohio General Assembly that would have resulted in funding for the Geauga County Airport Authority ("airport"). Though initially agreed upon by both the Ohio House and the Ohio Senate, the airport provision was eventually dropped from the appropriations bill by the conference committee. Grendell and his wife then brought suit against various members of the Ohio General Assembly, arguing that those members had violated internal legislative rules in dropping the airport provision. Grendell sought a writ of mandamus seeking, among other things, to compel the chairman of the Assembly conference committee to include the airport provision in a new committee report; to direct the Ohio House and Senate to vote on the report; and to order the Speaker of the Ohio House and the President of the Ohio Senate to present the bill to the governor. *See id.* at 630.

Not surprisingly, the Ohio Supreme Court dismissed the case. Citing a plethora of legal authority, that Court noted:

> [I]t is well settled that, in considering the validity of a statute, courts will not inquire into whether the legislature complied with its own rules in enacting the statute, so long as no constitutional provision is violated.

*Id.* at 633. Since the exclusion of the airport provision impugned no constitutional interests and dealt solely with observation of internal legislative procedures, the case was dismissed.

Before the issuance of the Ohio Supreme Court's opinion in *State of Ohio ex rel. Grendell,* the respondents in that case

moved for sanctions pursuant to Ohio Rule of Civil Procedure 11 and Ohio Revised Code § 2323.51. Grendell did not respond to that motion. In its decision, the Ohio Supreme Court addressed the Speaker's motion for sanctions, holding:

> Sanctions are warranted here. For the reasons previously discussed, this action is frivolous insofar as relators' counsel relied on the General Assembly's joint rules because the action is not reasonably well grounded in fact or warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. S.Ct.Prac.R. XIV(5). Further, as respondents contend, harassment is the only apparent rationale for relators' attorneys to erroneously allege that Thomas's actions constitute the criminal offenses of retaliation, intimidation, and coercion. Finally, these same attorneys recently filed a meritless extraordinary writ case in which we emphasized their "unjustified delaying tactics" and "acts of gamesmanship." *State ex rel. The Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 113, 712 N.E.2d 696, 701.

*State of Ohio ex rel. Grendell,* 86 Ohio St. 3d at 636.

Grendell then brought the instant action in federal district court, seeking a temporary restraining order ("TRO") against the Ohio Supreme Court to prevent the enforcement of sanctions pursuant to Rule XIV, § 5. Grendell alleged that the Ohio Supreme Court violated due process when it imposed sanctions pursuant to the Rule without notice and an opportunity to be heard. In recognition of the *Rooker-Feldman* doctrine of federal court jurisdiction, Grendell then amended his TRO to a general constitutional challenge seeking declaratory and injunctive relief. Grendell asserts that the Rule, on its face, violates the Due Process Clause as found in the Fifth and Fourteenth Amendments to the Constitution, since it fails to require notice and the opportunity to be heard before the imposition of sanctions. Grendell further claims

As noted earlier, Grendell's initial complaint sought a TRO to prevent the enforcement of sanctions imposed by the Ohio Supreme Court in *State of Ohio ex rel. Grendell.* Recognizing that the *Rooker-Feldman* doctrine likely barred federal district court review of the imposition of sanctions -- as that would involve lower federal court review of the Ohio Supreme Court's judgment in *State of Ohio ex rel. Grendell* -- Grendell voluntarily amended this initial complaint to a general constitutional challenge to Rule XIV, § 5. Given this conformity with the strictures of the *Rooker-Feldman* doctrine, the district court reasoned that if the "Supreme Court expressly stated that applicants for admission to the bar have standing" to bring a general constitutional challenge to the bar admission rule in *Feldman*, then Grendell must have standing to bring a general constitutional challenge to Rule XIV, § 5 in this case. Sargus Opinion and Order of 11/5/99, J.A. at 45.

We disagree. As an initial matter, the district court's assertion that, in *Feldman,* the Supreme Court found that the litigants had standing, is imprecise. This Court recognizes that *Feldman* expressly found that the district court in that case "has subject matter jurisdiction over [the general constitutional challenge] of [Feldman's] complaint[]." *Feldman,* 420 U.S. at 487. Given that standing is an essential component of jurisdiction in the federal courts, *see e.g. Allen v. Wright,* 468 U.S. 737, 750-51 (1984), it is understandable that the district court in this case would conflate such language with an explicit finding of standing. However, the central holding of *Feldman* is that jurisdictional statutes, such as 28 U.S.C. § 1257, prohibit federal district court review of a state supreme court judgment, but do not limit the jurisdiction of the federal district court as it relates to general constitutional challenges of state court rules. In this context, then, the Supreme Court's statement concerning subject matter jurisdiction in *Feldman* is most naturally read as a conclusion concerning the proper jurisdictional scope of constitutional challenges to state court rules, and should not

opportunity to sit for the bar examination. *Id.* at 467, 468-69. The District of Columbia Court of Appeals eventually upheld the bar admission regulation and dismissed the case. Feldman then brought suit in federal court, arguing that the District of Columbia Court of Appeals had acted unconstitutionally. The federal district court dismissed the action for lack of subject matter jurisdiction. *See id.* at 470.

The Supreme Court agreed, noting that a federal district court has no subject matter jurisdiction over state supreme court proceedings that are "judicial" in nature, and that review of such proceedings is available only in the United States Supreme Court. *See id.* at 476 (citing 28 U.S.C. § 1257). The Supreme Court then stated that a "judicial inquiry" is when "the court was called upon to investigate, declare, and enforce liabilities as they [stood] on present or past facts and under laws supposed already to exist." *Id.* at 479 (internal quotes and citation omitted). Consequently, Feldman could not make a collateral attack in federal district court on the District of Columbia Court of Appeals decision to dismiss the bar application, since that decision involved whether Feldman would be qualified for an exception to the bar application rule under those specific facts. *See id.* at 480-81.

However, the Supreme Court then drew a distinction between state court determinations that were "judicial" in nature, and those that were "legislative, ministerial or administrative." *Id.* at 479. Under such a distinction, a review of the state court decision denying the particular bar application might run afoul of federalism, but a "general challenge to the constitutionality" of the bar admission rule would not. *Id.* at 482-83. This is because a general constitutional challenge would not require a district court "to review a final state-court judgment in a judicial proceeding"; rather, the "district court may simply be asked to assess the validity of a rule promulgated in a nonjudicial proceeding." *Id.* at 486. Consequently, a district court would have subject matter jurisdiction to assess a general constitutional challenge to a state court rule. *See id.* at 487.

that the Ohio Supreme Court's prior imposition of sanctions pursuant to the Rule led him to withdraw from two cases before that Court, for fear of exposing himself to unconstitutionally imposed sanctions. The district court dismissed the action, holding, among other things, that Grendell had standing to sue, but that his due process claim was not meritorious. Grendell timely appeals, arguing that Rule XIV, § 5 is unconstitutional on its face. The Ohio Supreme Court opposes and cross-appeals, arguing that Grendell has no standing to bring the claim. Grendell opposes the cross-appeal.

## II. Standard of Review

This Court reviews a district court's legal determination of standing de novo. *See Johnson v. Econ. Dev. Corp. of the County of Oakland,* 241 F.3d 501, 507 (6th Cir. 2001). Since the district court dismissed this case pursuant to Fed. R. Civ. P. 12(b)(6), we accept all of Grendell's factual allegations as true. *See Jackson v. City of Columbus,* 194 F.3d 737, 746-47 (6th Cir. 1999).

## III. Analysis

Standing is the "threshold question in every federal case." *Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir. 1999). In order to satisfy Article III's standing requirement, Grendell: (1) must have suffered some actual or threatened injury due the to alleged illegal conduct (the "injury in fact element"); (2) the injury must be fairly traceable to the challenged action (the "causation element"); and (3) there must be a substantial likelihood that the relief requested will redress or prevent Grendell's injury (the "redressability element"). *See id.* Since this case deals with declaratory and injunctive relief, a pre-enforcement challenge may be made before the actual completion of an injury in fact. *See Nat'l Rifle Assoc. of Am. v. Magaw,* 132 F.3d 272, 279 (6th Cir. 1997). However, "when seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a

significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Id.*

Grendell presents three arguments to support the claim that he has standing to make a facial constitutional challenge to Rule XIV, § 5. First, Grendell notes that he was previously sanctioned, allegedly without due process protections, in *State of Ohio ex rel. Grendell*. Second, Grendell claims that he is subject to the "continuing (sic) present adverse effects of the unconstitutionality of . . . Rule XIV(5)" that "chills" the exercise of protected conduct. Grendell's 3d Br. at 28. Third, Grendell argues that since his claim arises under the *Rooker-Feldman* doctrine of jurisdiction, he has standing to bring his facial challenge to the constitutionality of Rule XIV, § 5. None of these justifications, however, are sufficient to confer standing in this case.

## A. Past Exposure to Sanctions

As an initial matter, the mere fact that Grendell was previously sanctioned by the Ohio Supreme Court in *State of Ohio ex rel. Grendell* is not an adequate injury in fact to confer standing for declaratory and injunctive relief. As the Supreme Court has noted, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983). Indeed, prior precedent establishes that where a state court has issued sanctions pursuant to a civil contempt proceeding, only those litigants still under the influence of those penalties have standing. *See Judice v. Vail,* 430 U.S. 327, 332-33 (1977) ("once the period of incarceration is served or the fine paid, the effect of the orders imposing a fine or commitment has expended itself," and the party lacks standing to seek injunctive relief). As the sanctions imposed by the Ohio Supreme Court have already been perfected by *State of Ohio ex rel. Grendell,* this past injury has no continuing, present adverse effects and cannot establish standing for declaratory and injunctive relief.

does not objectively establish an imminent threat that chills protected activity. *See Steffel,* 415 U.S. at 476 (Stewart J. concurring). While the previous imposition of sanctions is a factor this Court can consider in its standing determination, *see LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1155 (9th Cir. 2000), Grendell presents no evidence that the Ohio Supreme Court threatened to sanction him in the cases from which he voluntarily withdrew, nor does he present evidence that the Ohio Supreme Court currently threatens him with sanctions in any other case. Accordingly, any alleged chilling effect that Rule XIV, § 5 has on protected activity is an insufficient injury to support standing.

## C. The *Rooker-Feldman* Doctrine and Standing

Grendell also claims that an application of the *Rooker-Feldman* doctrine[1] ensures his standing in this case. In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)[2], Feldman challenged in "state" court[3] a District of Columbia bar admission rule which required bar applicants to submit proof of graduation from an American Bar Association accredited law school. Feldman, a bar certified lawyer in both Virginia and Maryland, received his legal education through a program of structured apprenticeship endorsed by the state of Virginia. *See id.* at 465. Given his "unusually high qualifications," Feldman sought immediate admission to the District of Columbia bar, or in the alternative, a waiver of the bar admission rule and an

---

[1] The *Rooker-Feldman* doctrine derives its name from two cases – *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), which revived a doctrine of federal court jurisdiction established by *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).

[2] *Feldman* actually addresses two companion cases, but only Feldman's need be described here.

[3] The District of Columbia Court of Appeals is the equivalent of a state supreme court.

For example, in *Steffel,* a Vietnam War protestor made a pre-enforcement challenge against an anti-handbilling statute. *See Steffel,* 415 U.S. at 455. The plaintiff established that he was twice warned to stop handbilling; informed that he would likely be prosecuted if he again handbilled and disobeyed a warning to stop; and his handbilling companion was prosecuted. *See id.* at 459. Accordingly, the Supreme Court determined that the plaintiff had made "ample demonstration that [his] concern with arrest [was not] chimerical." *Id.* By contrast, in *Younger,* two members of the Progressive Labor Party and a history professor made a pre-enforcement challenge against a state law that would allegedly have prevented the plaintiffs from advocating or teaching socialist or communist doctrine. *See Younger,* 401 U.S. at 39-40. In holding that the three plaintiffs had failed to allege an actual case or controversy, the Supreme Court explained:

> If these three had alleged that they would be prosecuted for the conduct they planned to engage in, and if the District Court had found this allegation to be true--either on the admission of the State's district attorney or on any other evidence--then a genuine controversy might be said to exist. But here appellees . . . do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible. They claim the right to bring this suit solely because, in the language of their complaint, they "feel inhibited."

*Younger,* 401 U.S. at 42.

In this case, Grendell's fear of unconstitutionally imposed sanctions are similar to the fears of the plaintiffs in *Younger.* Of course, this Court assumes for the purposes of a motion to dismiss, that Grendell withdrew from cases before the Ohio Supreme Court for fear of unconstitutionally imposed sanctions pursuant to Rule XIV, § 5. However, the mere fact that Grendell subjectively fears such sanctions, or "feels inhibited" by the Ohio Supreme Court's sanctioning power,

Previous sanctions might be "evidence bearing on whether there is a real and immediate threat of repeated injury." *Lyons,* 461 U.S. at 102. However, where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief. *See id.* at 109. For example, in *Lyons,* the plaintiff brought an action seeking to enjoin the Los Angeles Police Department ("L.A.P.D.") from using a choke-hold during arrests that had caused several deaths. *See id.* at 97-98, 100. Though the L.A.P.D. had previously used the choke-hold against the plaintiff in that case, the Supreme Court held that the future threat of injury was still too speculative to confer standing for injunctive relief. The Supreme Court reasoned:

> That Lyons may have been illegally choked by the police . . . while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation . . . .

*Id.* at 105.

Similarly, in *Ashcroft v. Mattis,* 431 U.S. 171 (1977), the father of a boy who was killed while fleeing the police sought a declaration that a state statute which authorized police to use deadly force in apprehending a person who committed a felony was unconstitutional. *See id.* at 171 n. 1. In arguing that he had standing, the father alleged that he had another son who

> *if* ever arrested or brought under an attempt to arrest on suspicion of a felony, *might* flee or give the appearance of fleeing, and would therefore be *in danger* of being killed by these defendants or other police officers . . . .

*Id.* at 172 n. 2. Accordingly, the Supreme Court found the threat of future injury too speculative to confer standing. *See id.* at 173 n. 2.

Given this precedent, Grendell has not established sufficient injury in fact to seek declaratory and injunctive relief to enjoin the alleged illegal application of Rule XIV, § 5. In other words, Grendell has failed to show that he is subject to "actual present harm or a significant possibility of future harm" in order to seek the requested declaratory and injunctive relief. *Nat'l Rifle Assoc. of Am.,* 132 F.3d at 279. As with the plaintiffs in *Lyons* and *Ashcroft,* the threat of Grendell's future injury is highly conjectural, resting on a string of actions the occurrence of which is merely speculative. In short, to show a palpable threat of future injury necessary to achieve standing for declaratory and injunctive relief, Grendell must present evidence establishing: (1) that he is bringing or highly likely to bring a lawsuit before the Ohio Supreme Court; (2) that such lawsuit is allegedly frivolous, exposing him to sanctions under Rule XIV, § 5; (3) that the Ohio Supreme Court would, in its discretion, impose such sanctions; and (4) that the imposition of those sanctions would violate due process. Such a chain of events is simply too attenuated to establish injury in fact, and to confer the required standing in this case.

## B. "Chilling Effect"

Grendell also argues that the Ohio Supreme Court's power to sanction attorneys pursuant to Rule XIV, § 5, "continuously expose[s the plaintiff-appellants] . . . to the 'chilling effect' of the hanging of the 'Sword of Damocles' over them." Grendell's 3d Br. at 27-28. As evidence of this chilling effect, Grendell avers that fear of unconstitutionally imposed sanctions forced him to withdraw from two recent cases before the Ohio Supreme Court.

Grendell cannot argue, however, that a chilling effect due to the possibility of attorney sanctions in this case is an injury

sufficient to confer standing. It is well-settled that facial constitutional challenges relying on the overbreadth doctrine, and the resultant chilling effect such overbreadth has on speech, are limited to the First Amendment sphere. *See City of Chicago v. Morales,* 527 U.S. 41, 52-53 (1999); *United States v. Salerno,* 481 U.S. 739, 745 (1987); *see also Wisconsin v. Mitchell,* 508 U.S. 476, 488 (1993) (noting that chilling effect and overbreadth are linked concepts). While the Supreme Court has previously stated that "some lawyering activity is undoubtedly protected by the First Amendment," that activity has dealt with "meaningful access to the courts." *See Roberts v. United States Jaycees,* 468 U.S. 609, 637 (1984) (O'Connor, J., concurring in part and concurring in judgment). Such activity has generally been confined to interference with an attorney's right to solicit or organize clients, especially for political or social purposes, *see e.g. In re Primus,* 436 U.S. 412, 431-32 (1978); or interference with a prisoner's right of access to legal materials or legal assistance in order to petition the government for a redress of grievances. *See e.g. Lewis v. Casey,* 518 U.S. 343, 350-51 (1996). As Rule XIV, § 5 deals with sanctions imposed against attorneys for frivolous or harassing lawsuits, *see State of Ohio ex rel. Grendell,* 86 Ohio St. 3d at 636, no First Amendment activity is impugned in this case.

Even assuming *arguendo* that attorney sanctions for frivolous or harassing lawsuits implicate First Amendment concerns, Grendell cannot establish that his fear of unconstitutionally imposed sanctions is a chilling effect sufficient to confer standing. In dealing with the chilling effect criminal statutes have on First Amendment expression, the Supreme Court has previously noted that "it is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459 (1973). However, those fears of prosecution cannot be merely "imaginary or speculative." *Younger v. Harris,* 401 U.S. 37, 42 (1971).