**Tyrone HIGHTOWER, Kirk McConer, Percy Brown and Jacob Manyong, Plaintiffs,**

**v.**

**CITY OF GRAND RAPIDS, Kevin Belk, Gregory Rekucki, Anthony Leonard, and Thomas Neimeyer, Defendant.**

No. 1:13–cv–469

United States District Court, W.D. Michigan, Southern Division.

Signed June 21, 2017

Bryan J. Waldman, Sinas Dramis Brake Boughton & McIntyre PC, Lansing, MI, Jason Daniel Williamson, American Civil Liberties Union, New York, NY, Miriam J. Aukerman, ACLU of Michigan, Julia Anne Kelly, Grand Rapids, MI, Michael J. Steinberg, ACLU Fund of Michigan (Detroit), Detroit, MI, for Plaintiffs.

Elliot J. Gruszka, Kristen Lee Rewa, Patrick James Lannen, Margaret P. Bloemers, City of Grand Rapids (City Attorney), Grand Rapids, MI, for Defendants.

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Paul L. Maloney, United States District Judge

Between September 2011 and March 2012, Plaintiffs were each arrested and issued citations for trespassing on the property of a commercial establishment. Plaintiffs filed this lawsuit, alleging the officers lacked probable cause to make each arrest. As part of their claims, Plaintiffs challenge the use of No Trespass Letters (NTLs) by the police, forms submitted by property owners or tenants to the Grand Rapids Police Department (GRPD). In addition to damages for constitutional violations, Plaintiffs seek declaratory and injunctive relief concerning the use of NTLs.

In 2013, the City of Grand Rapids changed the content of the blank forms, the NTLs that businesses can fill out and submit to the police. In this motion, Defendants argue Plaintiffs lack standing to seek any declaratory or injunctive relief regarding the current NTLs. (ECF Nos. 44 and 45.) Defendants also argue that Plaintiffs' claims for declaratory and injunctive relief are not ripe. The motion has been fully briefed. (ECF No. 69 Response and ECF No. 75 Reply). A hearing on the motion occurred on May 25, 2017.

In their response to this motion to dismiss and at the hearing, Plaintiffs attempt to narrow and focus the exact nature of their constitutional claims. According to Plaintiffs, the lawsuit is about the GRPD's policy of using NTLs as a basis for accusing individuals of trespassing on the property of a business, when no complaint has been made about that particular individual. According to Plaintiffs, this policy, what Plaintiffs' describe as the use of NTLs as a substitute for individualized probable cause, is vague and unconstitutional. Plaintiffs do not challenge the trespass ordinance as being unconstitutional.

Because Plaintiffs have not alleged sufficient facts to present a threat of an imminent, as opposed to a speculative, injury, the Court agrees that Plaintiffs lack standing to seek declaratory and injunctive relief affecting the current NTLs. And, because the content of the current NTLs is significantly different than the content of the NTLs used at the time of the arrests, the Court agrees that Plaintiffs' claims for declaratory and injunctive relief are not ripe. Therefore, Defendants' motion will be granted.

## I.

█ The controlling pleading is Plaintiffs' second amended complaint.[1] (ECF No. 36.) Through this motion, Defendants generally argue that Plaintiffs lack standing. The Sixth Circuit has held that standing doctrine, specifically the constitutional requirement for a case or controversy, is a jurisdictional limitation on federal courts. *See Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014); *e.g., Hyman v. City of Louisville*, 53 Fed.Appx. 740, 743 (6th Cir. 2002) ("Standing, a jurisdictional element drawn from Article III constitutional requirements as well as prudential considerations, is not waivable by the parties and must be present in every case."). The Sixth Circuit has also held that standing, as a challenge to the court's subject-matter jurisdiction, is properly raised through a motion under Rule 12(b)(1). *Lyshe v. Levy*, 854 F.3d 855, 857–58 (6th Cir. 2017). " 'The party invoking federal jurisdiction bears the burden of establishing' standing" *Susan B. Anthony List v. Driehaus*, — U.S. —, 134 S.Ct. 2334, 2342, 189 L.Ed.2d 246 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 1148, 185 L.Ed.2d 264 (2013)).

█ Generally, the support that a plaintiff must provide to establish standing will depend on the stage of the litigation when standing is challenged. *See Susan B. Anthony List*, 134 S.Ct. at 2342 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). When considering a motion to dismiss for lack of standing, federal courts

---

1. By stipulation of the parties, all claims brought by Gilbert Weber have been dismissed. (ECF No. 124 PageID.1067–68.) Defendants John Guerrero and Thomas McCarthy were dismissed because only the claims against them arose from Weber's arrest. Also, the Court granted a motion to substitute a defendant. David Rahinsky, the current Chief of Police, has been substituted as a defendant in place of Kevin Belk, the former Chief of Police. (ECF No. 125 PageID.1069.)

must accept as true all material allegations in the complaint. *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). A motion to dismiss under Rule 12(b)(1) may challenge the sufficiency of the pleadings (a facial challenge) or the factual existence of subject-matter jurisdiction (a factual challenge). *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). In a facial challenge, the court considers the sufficiency of the pleadings and accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Cartwright*, 751 F.3d at 759. When the defendant challenges subject-matter jurisdiction through a facial attack, the court considers only the factual allegations in the complaint. *See Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003); *accord Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6) safeguards.'") (citation omitted); *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) ("In reviewing a facial attack, the court must consider only the allegations of the complaint and documents reference therein and attached thereto, in the light most favorable to the plaintiff."). In their reply brief, Defendants state that their motion asserts a facial attack on the complaint. (ECF No. 75 Reply Br. at 8 PageID.976.) Because this motion was filed under Rule 12(b), and because Defendants have clarified that the motion is a facial attack, the Court considers only the pleadings and will not consider evidence outside the pleadings.[2]

## II.

The City of Grand Rapids has enacted ordinances addressing disorderly conduct, including property offenses, which are found in Title IX, Chapter 152, Article 1 of the City Code. Included in that ordinance is a general prohibition on trespassing.[3] The ordinance provides

No person shall:

(1) Trespass upon the premises of another or unlawfully remain upon the premises of another to the annoyance or disturbance of the lawful occupants.

Grand Rapids, MI. Code § 9.133(1). The City's ordinances do not separately define the term "trespass." *See* Grand Rapids, MI. Code § 9.107. Where terms are not defined in any part of the Grand Rapids City Code, "such terms shall have the ordinarily accepted meanings consistent with the text of this Chapter." *Id.*

For more than twenty years, the Grand Rapids Police Department has made available, in some form, what are referred to by the parties as No Trespass Letters. The NTLs are standardized forms that must be completed by participating property owners or occupants and returned to the police. (Compl. ¶ 33 PageID.527; ECF No. 36–2 NTL PageID.564–66.) NTLs must be submitted each year, or when a tenant or ownership of the property changes. (Compl. ¶ 41 PageID.528; NTL Pa-

---

2. Plaintiffs have attached twenty-four exhibits to their response. Where those exhibits are not referenced in the complaint, the Court has not considered that evidence. *See* Fed. R. Civ. P. 12(d).

3. The City has also enacted an ordinance prohibiting loitering in any "premises owned by another person after having been requested to leave by the lawful owner or occupant or a representative of the owner or occupant." Grand Rapids, MI. Code § 9.136(5).

geID.566.) Between January 1, 2009, and May 15, 2012, more than 2000 NTLs were returned to the GRPD. (Compl. ¶ 45 PageID.528.) Of those, over 800 were returned by a business entity.[4] (*Id.*) Many of the businesses are open to the public and include retail stores, supermarkets, gas stations, and even restaurants. (*Id.* ¶ 46 PageID.528.)

Over the years, different versions of the NTLs have been used. (Compl. ¶ 34 PageID.527.) When Plaintiffs were arrested, the NTLs were formatted as a letter to the Detective Unit in the Grand Rapids Police Department. (NTL PageID.564.) The letter stated that it "serves notice to your office that the occupant (s) and/or owners of this address will prosecute all trespassers." (*Id.*) The form contained sections which needed to be filled with information. The form included a section where the business or tenant was identified and a section where the owner was identified. (*Id.*) Instructions were included on the third page. (*Id.* PageID.566.) The instructions provided that "the attached letter is intended to assist in keeping trespassers off your property." (*Id.*)

Sometime after each of Plaintiffs' arrests, the NTL was revised. (Compl. ¶ 69 PageID.532.) The GRPD now uses the revised NTLs. (*Id.* ¶ 70 PageID.532.) In addition to asking for information about the occupant of the property, the form now asks the filer to identify the problems that unauthorized persons are causing on or to the property. (ECF No. 37-3 Revised NTL PageID.626.) The revised form includes the following statement:

As OWNER /AGENT / RESIDENT / TENTANT of the property located

above, I request that the officers of the Grand Rapids Police Department assist in dealing with trespassers at this location for the next twelve-month period, Beginning on: _____ and continuing through: _____.

(*Id.*) The revised form also includes an authorization for the police officers to act on behalf of the filer.

I authorize the GRPD to ask unauthorized persons to leave the property. If they refuse to do so, or return thereafter, I authorize the GRPD to enforce any violations of the law on the property. My agent or I will cooperate in the prosecution of such persons for these offenses. I will support prosecution and will appear in court to testify if necessary.

(*Id.*) In addition to revising the NTL, the GRPD now encourages business owners to post a "Conditions of Entry" sign. (Compl. ¶ 79 PageID.533.) The sign states that the property is reserved for use by patrons and customers, and that there is no entry or remaining on the property for purposes unrelated to the business. (*Id.* ¶ 80 PageID.533; ECF No. 37-4 Sign PageID.628.) The sign also states that GRPD officers are authorized by the owner to enforce violations of the City Code, which includes arrest for trespassing. (Sign PageID.628.)

In the complaint, each plaintiff alleges facts related to his conduct since his arrest. Plaintiff Tyrone Hightower is a resident of Kalamazoo, Michigan. (Compl. ¶ 17 PageID. 524.) Since his arrest, and because he fears being arrested again, Hightower avoids visiting Grand Rapids. (*Id.* ¶ 121 PageID.540.) Although he would like

4. Because the NTLs must be refiled each year, it is likely that the 800 NTLs submitted during this three-and-a-half year time period included renewal letters. Without minimizing the significance of the number of businesses that submitted NTLs, the Court does not infer that more than 800 businesses in the Grand Rapids area have filed NTLs with the police department.

to patronize businesses in Grand Rapids, Hightower will not do so as long as NTLs are used as a basis for arrests for trespassing. (*Id.* ¶ 123 PageID.540.)

Plaintiff Kirk McConer is a resident of Grand Rapids, Michigan. (Compl. ¶ 18 PageID.525.) Since his arrest, he avoids shopping at the party store where he was arrested and also avoids using the parking lot near that store. (*Id.* ¶ 139 PageID.543.) McConer is fearful of being arrested again as long as NTLs are used as a basis for arrests for trespassing. (*Id.* ¶ 139–40 PageID.543.)

Plaintiff Percy Brown is a resident of Grand Rapids, Michigan. (Compl. ¶ 19 PageID.525.) Brown continues to patronize the business where he was arrested, as well as the new business at the same location. (*Id.* ¶ 151 PageID.544.) However, Brown will not do anything that requires him to spend time in the parking lot of the business, and intends to avoid that conduct so long as NTLs are used as a basis for arrests for trespassing. (*Id.*) Brown fears being arrested again. (*Id.* ¶ 151–152 PageID.544–45.)

Plaintiff Jacob Manyong is a resident of Grand Rapids, Michigan. (Compl. ¶ 20 PageID.525.) As long as NTLs are used as a basis for arrests for trespassing, Manyong is fearful of being prosecuted. (*Id.* ¶ 169 PageID.547.) Whenever possible, Manyong avoids areas where he thinks he might be arrested for trespassing. (*Id.*)

Plaintiffs also allege facts about the GRPD's use of NTLs. The GRPD maintains a database of NTLs, which is accessible to its officers. (Compl. ¶ 181 PageID.549.) GRPD trains officers to determine whether a particular property is covered by an NTL. (*Id.* ¶ 188 PageID.550.) GRPD also trains officers that an NTL may be considered when determining whether the officer has probable cause to arrest an individual for trespassing. (*Id.* ¶ 190 PageID.551.) Defendants have produced 2,693 incident reports related to arrests, citations, and stops for trespass, all of which occurred in Grand Rapids between January 1, 2009, and August 21, 2013. (*Id.* ¶ 83 PageID.534.) In 2012, during 270 separate incidents, police officers in Grand Rapids arrested or cited 348 people for trespassing on property where the business had filed an NTL with the GRPD.[5] (*Id.* ¶¶ 84–85 PageID.534–35.)

### III.

■ To having standing to sue in federal court, a plaintiff must demonstrate (1) he or she has suffered an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Kiser*, 765 F.3d at 607 (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130). These three elements have been called the "irreducible constitutional minimum" for standing, and the plaintiff, as party invoking federal jurisdiction, bears the burden of establishing all three elements. *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130).

■ While a plaintiff might have standing to seek damages or redress for past injuries, that plaintiff must demonstrate separate standing when seeking declaratory or injunctive relief. *Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015);

---

**5.** From these two assertions, the Court infers that not every incident report that was filed necessarily involved either an arrest or a citation for trespassing, or both. Some, possibly even many, incident reports related to trespassing involved only stops, but not arrests or citations.

see *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (holding that the plaintiff "bears the burden of showing that he has standing for each type of relief sought."). For pre-enforcement challenges, the standing issue "often turns on whether [the plaintiff] can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against him." *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (quoting *Kiser*, 765 F.3d at 607). Previous exposure to illegal conduct, by itself and without a showing of continuing and present adverse effects, does not establish a case or controversy for the purpose of seeking declaratory or injunctive relief. *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *Lyons*, 461 U.S. at 102, 103 S.Ct. 1660).

■■■■■ For declaratory or injunctive relief in pre-enforcement challenges, allegations of a future injury may establish standing for seeking prospective relief. To have standing for declaratory or injunctive relief for a future injury, the plaintiff must establish that the threatened injury is "certainly impending" or that there exists a "substantial risk that the harm will occur." *McKay*, 823 F.3d at 867; *Barber*, 809 F.3d at 849. When the plaintiff is under the threat of prosecution for violating criminal statute, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List*, 134 S.Ct. at 2342. A plaintiff can satisfy the injury-in-fact element for standing in a pre-enforcement lawsuit by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but prescribed by a statute, and there exists a credible threat of prosecution thereunder." *McKay*, 823 F.3d at 867 (quoting *Susan B. Anthony List*, 134 S.Ct. at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979))).

The United States Supreme Court has considered standing in pre-enforcement challenges on multiple occasions. In *O'shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the plaintiffs, white and black civil rights activists, alleged that the police and the judiciary for the city and county engaged in discriminatory practices during the administration of the criminal justice system in violation of the First, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. *Id.* at 490, 94 S.Ct. 669. When the lawsuit reached the Supreme Court, only the claims against the county magistrate and the county judge were at issue. *Id.* at 491, 94 S.Ct. 669. The Court considered three claims. First, the defendants set bonds in criminal cases according to an unofficial schedule and without consideration of the circumstances of the case or the individual charged. Second, the defendants imposed higher and harsher sentences on black defendants than on white defendants. Third, when the charges carried fines and possible jail sentence which could not be paid by the accused, the accused had to pay for a trial by jury. Important to the manner in which standing was resolved, the plaintiffs did not seek damages against the county magistrate and judge. *Id.* at 492, 94 S.Ct. 669. Also, the complaint did not allege any specific instances involving the named plaintiffs in the claims against the county magistrate and the county judge. *Id.*

The Court held that the plaintiffs lacked standing to seek prospective relief against the county magistrate and county judge. *O'shea*, 414 U.S. at 493, 94 S.Ct. 669. The complaint did not identify any of the named plaintiffs as "having suffered any injury in the manner specified." *Id.* at 495, 94 S.Ct. 669. When the complaint was filed,

none of the plaintiffs were serving an allegedly illegal sentence or were awaiting trial before the county defendants. *Id.* The Court also found that the allegations of past wrongs did not provide sufficient evidence of a future injury. *Id.* at 496, 94 S.Ct. 669. The Court noted that the plaintiffs did not allege that any criminal statute was unconstitutional so that they might be improperly charged with violating a criminal law. *Id.* The Court reasoned that "[w]e assume that respondents will conduct their activities within the law and so avoid prosecution and conviction[.]" *Id.* at 497, 94 S.Ct. 669. Therefore, the Court concluded, "attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture." *Id.*

In *Steffel v. Thompson*, 415 U.S 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the plaintiff was handing out leaflets at a shopping center. He was asked to leave by employees, but declined to do so. The police were called and they informed the plaintiff that if he did not leave, he would be arrested. He left. Two days later, the same events occurred. The plaintiff left, but his companion did not and was arrested for criminal trespass. The plaintiff sought a declaratory judgment that the state criminal statute was unconstitutional. The plaintiff stated in his complaint that he wanted to return to the shopping center to distribute leaflets, but had not done so because of his fear that he would be arrested. *Id.* at 456, 94 S.Ct. 1209. The parties stipulated that, if the plaintiff returned and again refused, upon request, to stop handing out leaflets, he would be arrested. *Id.* The Supreme Court held that the facts presented an actual controversy, as required by Article III and the Federal Declaratory Judgment Act. *Id.* at 459, 94 S.Ct. 1209.

In *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), the plaintiffs challenged five provisions of Arizona's farm labor statute. The Court held generally that a "plaintiff who challenges a statute must demonstrate a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement[,]" but the plaintiff "does not have to await consummation of the threatened injury to obtain prospective relief. If the injury is certain impending, that is enough." *Id.* at 298, 99 S.Ct. 2301 (citations omitted). "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Id.* at 298, 99 S.Ct. 2301 (citation omitted).

The Court found the plaintiff had standing to challenge portions of the statute. The Arizona statute made it an unfair labor practice to induce or encourage the consumer of an agricultural product from purchasing or using the product by dishonest, untruthful or deceptive activity. The United Farm Workers alleged that it has in the past and would in the future engage in boycott activities. *Babbitt*, 442 U.S. at 301, 99 S.Ct. 2301. Although it did not intend to propagate untruths, erroneous statements are inevitable in a free debate. *Id.* Citing *Steffel*, the Court held that where the fear of criminal prosecution is not imaginary, a plaintiff need not expose himself to prosecution to challenge the statute. *Id.* at 302, 99 S.Ct. 2301. And, Arizona had not disavowed enforcing the criminal penalty provision. *Id.* Because the statute was vague, and because the Union desired and intended to engage in publicity campaigns, the Court found the challenge to the statute was based on a case or controversy. *Id.* at 303, 99 S.Ct. 2301.

In *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court held that the plaintiff had not alleged facts to establish a case or controversy sufficient to have standing for injunctive relief. The plaintiff had been subjected to a chokehold by the police during a routine traffic stop. He alleged that officers were authorized to use the chokeholds, and routinely did so, even in situations where there was no threat of deadly force. Fifteen people had died when the police employed the chokehold. Before the Court heard the case, the City had imposed a six-month moratorium on the use of the chokehold, except under circumstances where deadly force is authorized. The Court reasoned that Lyons could not establish a real and immediate threat that he would be stopped for a traffic violation by an officer who would use the chokehold without provocation. *Id.* at 105, 103 S.Ct. 1660. The Court explained that, to establish a case or controversy, Lyons would have to establish (1) that all police officers in *Los Angeles* always choke any citizen they happen to encounter or (2) that the City ordered and authorized police officers to act in such a manner. *Id.* at 106, 103 S.Ct. 1660.

Finally, *Susan B. Anthony List v. Driehaus*, —— U.S. ——, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014), involved an Ohio statute which made it a crime for a person to make a false statement concerning the voting record for a candidate or public official. 134 S.Ct. at 2338. Steve Driehaus filed a complaint with the state election commission against the Susan B. Anthony List (SBA), alleging violations of this statute. SBA then filed suit in federal district court seeking declaratory and injunctive relief, arguing that the statute violated the First and Fourteenth Amendments. The Court found that SBA's allegations met the injury-in-fact element for standing. *Id.* at 2347. The Court concluded that SBA had alleged an intention to engage in the same course of conduct during future election cycles, which arguably affected a constitutional right. *Id.* at 2343–44. The Court also concluded that the intended future conduct arguably fell within the matters proscribed by the state statute. *Id.* at 2344. Finally, the Court found that the threat of future enforcement of the statute was substantial. *Id.* at 2345.

■■ Plaintiffs have not alleged sufficient facts to establish the injury-in-fact element for standing to seek declaratory and injunctive relief. None of the plaintiffs allege an intent to engage in conduct that arguably falls under the trespass statute. Plaintiff Hightower does not live in Grand Rapids and has alleged that he has avoided Grand Rapids since his arrest. (Compl. ¶ 121 PageID.540.) He further alleges that he intends to avoid patronizing local businesses in Grand Rapids as long as the defendants use NTLs. (*Id.* ¶ 123 PageID.540.) If Hightower avoids Grand Rapids, and does not patronize any businesses there, he does not face any threat of future prosecution for trespassing under the Grand Rapids ordinance.

The other three named plaintiffs do reside in Grand Rapids, but all allege that they will avoid conduct that would put them at risk of being arrested for trespassing. Brown alleges that he will no longer "engage in any actions that might require him to spend any time in the parking lot" of the business where he was arrested. (Compl. ¶ 151.) Brown further alleges that he "intends to avoid taking such actions" while the defendants use NTLs. (*Id.*) McConer avoids shopping at the store where he was arrested, avoids using the parking lot where he was arrested, and also avoids patronizing other businesses in the area. (*Id.* ¶ 139.) Manyong alleges that he now avoids areas where he

thinks that he might be arrested for trespassing, including the area where he was arrested. (*Id.* ¶ 169.) He is also considering moving away from Michigan altogether. (*Id.*)

Even if their intent is not relevant, Plaintiffs have not alleged facts to establish that they suffer a present and on-going harm. To avoid the consideration of intent, Plaintiffs argue that they cannot engage in ordinary and every-day activities without risking arrest. But, this alleged injury is too speculative. The risk of being arrested relies on a chain of events, all of which must be present for the injury to manifest. It is likely that McConer, Brown and Manyong will continue to patronize businesses in Grand Rapids. However, it is speculation and conjecture whether any of the businesses have NTLs on file with GRPD. It is speculation and conjecture that a police officer would be present and observe McConer, Brown or Manyong on the property of one of those businesses with an NTL on file. It is speculation and conjecture whether the officer would perceive the conduct of Plaintiffs as trespassing. It is speculation and conjecture that a police officer would then act on his or her suspicion. And, all of those events are necessary for the harm, an unlawful arrest or citation for trespassing, to occur.

Plaintiffs contend their inability to know which businesses have filed NTLs, and the lack of notice in the NTLs about what constitutes a trespass, results in a chilling effect on their freedom of movement. The Sixth Circuit has stated that "[i]t is well-settled that facial constitutional challenges relying on the overbreadth doctrine, and the resultant chilling effect such overbreadth has on speech, are limited to the First Amendment sphere." *Grendell*, 252

F.3d at 834. Like *Grendell*, "no First Amendment activity is impugned in this case." *Id.* For this reason, the facts and the holding in *Steffel* are distinguishable as that case involved a First Amendment challenge. And, even in the First Amendment context, fear of prosecution cannot be imaginary or speculative. *Grendell*, 252 F.3d at 834 (quoting *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

 Where plaintiffs challenge a statute that does not chill First Amendment rights, the requirements for standing are "[m]ore stringent." *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 285 (6th Cir. 1997). For non-First Amendment situations, a plaintiff ordinarily must allege some on-going or existing harm, like an economic injury arising from compliance measures. *Id.* (discussing a ripeness challenge). Here, Plaintiffs have not alleged any injury that results from their refraining from activities that might subject them to arrest. *See American Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 656 (6th Cir. 2007) (Batchelder, J.).[6]

Based on the allegations in the pleadings, Plaintiffs are more like the plaintiffs in *O'shea* and *Lyons*, than they are like the plaintiffs in *Babbitt* and *Susan B. Anthony List*. Like the plaintiffs in *O'shea/Lyons*, here Plaintiffs fear a set of events which may or may not occur. Plaintiffs do not know if or when they might be arrested for trespassing. And, like the plaintiffs on *O'shea/Lyons*, Plaintiffs are not challenging the constitutionality of a statute or law. Unlike the plaintiffs in *Babbitt/Susan B. Anthony List*, Plaintiffs have not announced an intention to engage in conduct

---

**6.** Judge Batchelder distinguishes between harms that cause one to refrain from an activity and harms that result from refraining from

an activity. Judge Gibbons sided with Judge Batchelder, but concurred in the judgment only. *Id.* at 688. Judge Gilman dissented.

proscribed by a criminal statute that would likely result in their prosecution.

Plaintiffs' reference to *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) is not persuasive. In *McLaughlin*, the plaintiff alleged that the County's policy of combining probable cause determinations with its arraignment procedures violated the Fourth Amendment's requirement of a prompt probable cause determination following a warrantless arrest. *Id.* at 47, 111 S.Ct. 1661. A state statute required arraignments to be held within two days, excluding weekends and holidays. As a result, some individuals arrested without a warrant toward the end of the week might not receive a probable cause hearing for as long as four days, and around some holidays, the delay might be as long as a week. *Id.* The plaintiffs sought both declaratory and injunctive relief, individually and as class representatives. *Id.* at 49, 111 S.Ct. 1661. The Court rejected the County's argument that the named plaintiffs lacked standing. *Id.* at 51, 111 S.Ct. 1661. When the second amended complaint was filed, three of the plaintiffs had been arrested without a warrant, were being held in custody, and had not received a probable cause determination, "prompt or otherwise." *Id.* The Court found that "[p]lainly, plaintiffs' injury was at that moment capable of being redressed through injunctive relief." *Id.* And, because the district court ultimately granted class certification, the merits of the controversy were preserved. *Id.* Plaintiffs' situation here is easily distinguished from the plaintiffs in *McLaughlin*. Here, none of Plaintiffs have pending charges for trespassing.

This Court finds *White v. United States*, 601 F.3d 545 (6th Cir. 2010) persuasive. In *White*, the plaintiffs sought a declaratory judgment that provisions of a federal statute, the Animal Welfare Act (AWA) were unconstitutional. *Id.* at 548. The disputed provisions of the AWA generally prohibited animal fighting ventures, including the buying, selling, transporting, delivering or receiving any animal for the purpose of having that animal participate in a fighting venture. Four of the named plaintiffs sold chickens, and the other named plaintiff was a gamefowl judge who promoted gamefowl shows. *Id.* at 549–50. In addition to economic injuries, the plaintiffs alleged constitutional violations. Each constitutional violation relied on the same fear of false prosecution. Plaintiffs were concerned that, if they traveled with their chickens, they might be accused of violating the AWA. First, the plaintiffs alleged violations of their liberty interests in travel under the Fifth Amendment. The plaintiffs alleged that their "right to travel with chickens intended for non-fighting purposes" was chilled. *Id.* at 550. Second, plaintiffs alleged their First Amendment right of association was impinged because they could not travel to events and associate with like-minded people. *Id.* Plaintiffs also alleged the AWA inflicted a punishment tantamount to a bill of attainder and also that the AWA violated principles of federalism protected by the Ninth, Tenth and Eleventh Amendments. *Id.*

The Sixth Circuit held that the plaintiffs lacked standing. The court found that the fear of false prosecution and the resulting chilling effect was too speculative to confer standing. *White*, 601 F.3d at 553. First, the court explained that the plaintiffs' intent to engage in prohibited conduct was not relevant to their allegation that they risked false prosecution for engaging in legal conduct. *Id.* The court found the situation similar to that in *O'shea*. *Id.* Second, the court concluded that the risk of false prosecution was too attenuated to be a concrete injury. *Id.* at 553–54. The potential for a false prosecution relied on a chain of events, each of which must occur before

the injury could manifest. *Id.* at 554. Third, the court held that injuries from an alleged chilling effect were limited to the First Amendment context, and did not extend to the right to travel, the right of association, or the right to be free from bills of attainder. *Id.*

Plaintiffs here and in *White* all fear being falsely arrested because their legal conduct might be misperceived by law enforcement officers. It is no more illegal for Plaintiffs to casually saunter down the sidewalk or pause in a parking lot than it was for the purveyors of poultry to transport their wares across state lines. And, while all fear being falsely accused of violating the law, the risk of that injury manifesting is mere speculation and conjecture.

### IV.

■ Defendants also argue that any claim for relief, including declaratory and injunctive relief related to the revised NTL and the sign, are not ripe. All of the Plaintiffs were arrested before the NTL was revised. (Compl. ¶ 71. PageID.532.) None of the Plaintiffs have been arrested or cited for trespassing since the GRPD began using the revised NTLs.

■ The ripeness doctrine prevents courts from becoming entangled in abstract disagreements when they adjudicate controversies that have not yet matured. *Magaw*, 132 F.3d at 284 (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)). Ripeness is an issue when the case or controversy hinges on future events that may or may not occur. *Id.* For pre-enforcement challenges, a case or controversy is ripe " 'only if the probability of the future event occurring is substantial and of

sufficient immediacy and reality to warrant issuance of a declaratory judgment.' " *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998) (citation omitted). Courts should consider three factors when determining whether pre-enforcement challenges are ripe: (1) whether the legal analysis would benefit from having a concrete factual context, (2) the extent to which the enforcement authority's legal position is subject to change before enforcement, and (3) the hardship on the parties by withholding consideration of the issue. *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003). Ripeness concerns "have particular resonance in the context of Fourth Amendment disputes." *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008). The Fourth Amendment imposes a reasonableness standard, which requires courts to consider the totality of the circumstances on a case-by-case basis. *Id.* Because of the context specific nature of Fourth Amendment reasonableness, challenges are typically made post-enforcement, not pre-enforcement. *Id.*

Defendants have established that any claim for relief connected to the revised NTLs is not ripe. There are important differences between the NTLs on which the officers relied when arresting Plaintiffs and the NTLs the GRPD now uses.[7] The revised NTLs require officers to order individuals to leave the property and permit officers to arrest individuals for trespassing only after the individual refuses the order or later returns. (Revised NTL PageID.626.) The GRPD also now encourage business owners to post a Conditions of Entry sign. (Comp. ¶ 79.) The new signs identify the conditions of entry and also warn individuals that violations may result

---

7. There exists evidence in the record, depositions of officers, supporting the conclusion that officers do not think they need to order people to leave before that individual can be arrested for trespassing. Because this is a pleadings-based motion, the Court has not considered that evidence. *See* Fed. R. Civ. P. 12(d).

in arrest for trespassing. (Sign PageID.PageID.628.) The Court infers that the "new" (Compl. ¶ 79) signs were not in use when Plaintiffs were arrested. The Court would benefit from have a more concrete factual context to consider any effects the revisions to the NTL may have.

## V.

Defendants are entitled to dismissal of Plaintiffs' requests for declaratory and injunctive relief. Plaintiffs' allegations are not sufficient to establish the injury-in-fact element required for standing in this non-First Amendment pre-enforcement challenge to government action. Plaintiffs have not alleged facts to support a present and on-going harm or a substantial risk of a future harm. The risk to Plaintiffs of arrest for trespassing is merely speculative. The fear of false prosecution for trespassing is not sufficient to establish a present and on-going injury because this is not a First Amendment challenge. And, Plaintiffs have not alleged an economic or other injury as the result of their inaction.

In addition, the changes to the NTLs render the requests for prospective relief unripe. The Court would benefit from factual development for context before considering what effect the revised NTLs have on arrests for trespass under the Ordinance. While the general and abstract policy might remain the same, the changes to the letters appear to impose new practices that would alleviate many of the concerns that Plaintiffs raise.

## ORDER

For the reasons provided in the accompanying Opinion, Defendants' motion to dismiss (ECF No. 44) is GRANTED.

**IT IS SO ORDERED.**